# IN THE COURT OF APPEALS OF IOWA

No. 20-0483
Filed June 3, 2020

**IN THE INTEREST OF C.F., C.H., and C.V.,**
**Minor Children,**

**B.F., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.


A mother appeals the termination of her parental rights. **AFFIRMED.**


Molly Vakulskas Joly of Vakulskas Law Firm PC, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Theresa Rachel of Fankhauser Rachel, PLC, Sioux City, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., May, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A mother appeals from the termination of her parental rights to her children, C.F., C.H., and C.V.[1]  On appeal, she (1) challenges the statutory ground authorizing termination, (2) argues termination is not in the children's best interests, and (3) claims the juvenile court erred in denying her additional time to work toward reunification.

**I. Statement of the Facts**

This family came to the attention of the Iowa Department of Human Services (DHS) in August 2017 when C.H. tested positive for methamphetamine at birth. The juvenile court issued an order removing C.V. and C.H. from their mother's care.  But the mother absconded with the children for several months.  DHS located the mother when she entered substance-abuse treatment and removed the children from her care.  C.H. and C.V. tested positive for methamphetamine following removal.

Following discharge from substance-abuse treatment, the mother participated in services.  And the children returned to the mother for a trial home placement in June 2018.  In August, the juvenile court returned care, custody, and control of C.H. and C.V. to the mother subject to supervision by DHS.

But in February 2019, the mother gave birth to C.F., who tested positive for methamphetamine and amphetamines.  And in August, DHS removed all three children from the mother's care following allegations she was using methamphetamine while caring for them.  The mother subsequently tested positive

---

[1] Each of the children's father's parental rights were terminated.  No father appeals so our opinion and recitation of relevant facts only relate to the mother.

for methamphetamine. All three children tested positive for methamphetamine following removal, and C.F. also tested positive for amphetamines. The juvenile court placed the children in DHS's custody, care, and control.

The mother completed inpatient substance-abuse treatment in October. However, she used methamphetamine the day after she was discharged. She again tested positive for methamphetamine at outpatient group therapy in November. As a result, she was discharged from outpatient treatment. Following discharge from the outpatient program, the mother moved to a halfway house but was kicked out for using methamphetamine.

In January 2020, the juvenile court held a termination hearing. The mother testified that she last used methamphetamine in November 2019. And she conceded she had not received any substance-abuse treatment since she left the halfway house. She also professed that she wanted to change her life but opined, "It's just too late now." Yet she requested additional time to work toward reunification.

Following the hearing, the juvenile court terminated the mother's parental rights. She now appeals.

## II. Scope and Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under Iowa Code section 232.116(1) (2019) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). Finally, we consider any additional claims brought by the parent. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

## III. Discussion

### A. Statutory Grounds

The mother challenges the sufficiency of the evidence supporting the statutory ground authorizing termination. The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(*l*). Section 232.116(1)(*l*) authorizes termination of a parent's parental rights when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

We find each element of paragraph (*l*) satisfied. The children were adjudicated as children in need of assistance and custody was transferred from the mother to DHS.

The mother suffers from "F15.20—other or unspecified stimulant use disorder, severe"—a severe substance-related disorder. *See* Iowa Code § 125.2(15) ("'Substance-related disorder' means a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in functional impairment.[2]"); *see also In re G.B.*, No. 14-1516, 2014 WL 6682456, at *3 (Iowa Ct. App. Nov. 26, 2014) (recognizing paragraph (*l*) "requires consideration of diagnostic criteria from the DSM-5"). Because the children have tested positive for methamphetamine multiple times, we find the mother's substance-related disorder presents a danger to the children as evidenced by prior acts.

The mother's prognosis indicates the children will not be able to return to her care within a reasonable time given their young ages and need for permanency. The mother continues to abuse methamphetamine outside of controlled environments. She used methamphetamine the day after she was released from inpatient treatment. She was kicked out of a halfway house shortly

---

[2]The mother received a F15.20 classification, a recognized classification by the American Psychiatric Association. *See* American Psychiatric Association, *DSM-5 Diagnoses and New ICD-10-CM Codes* 2, https://www.google.com/url?sa=t&rct=j &q=&esrc=s&source=web&cd=3&ved=2ahUKEwjm0LiNvY7pAhVHV80KHQOMC pAQFjACegQICBAB&url=https%3A%2F%2Fwww.psychiatry.org%2FFile%2520L ibrary%2FPsychiatrists%2FPractice%2FDSM%2FICD10-Changes-Listed-by-DSM5-October-2017.pdf&usg=AOvVaw0JrnpahUM8-vsQVM8ezgnk.

thereafter for using methamphetamine. She admits to lying in order to protect her drug use. She went so far as to falsify documentation indicating she was attending Narcotics Anonymous and Alcoholics Anonymous when she was not. And she has come to visitations with her children while under the influence of methamphetamine.

The mother touts her recent employment, savings efforts to obtain future housing, efforts to obtain a driver's license, and "major breakthrough regarding her addiction and history of lying" as evidence that her prognosis is good. But we do not believe any of these circumstances meaningfully impact the mother's prognosis. Critically, the mother is not engaged in substance-abuse treatment or mental-health services. She claims to be on step four of a twelve-step rehabilitation program, but she could not verify her attendance at meetings and her claimed sponsor did not appear at the hearing to corroborate her participation. In the absence of substance-abuse and mental-health treatment, we cannot determine her prognosis is on an upward trajectory. Instead, we anticipate the mother will continue to struggle with her severe substance-related disorder, rendering her unable to parent for the foreseeable future. *Cf. In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (recognizing a parent's limited progress on the eve of termination is not sufficient to assure the court that the reasons necessitating removal have been abated or will abate in the near future).

For these reasons, we find the State established grounds for termination under section 232.116(1)(*l*). The first step in our analysis is satisfied.

**B. Best Interests**

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

We conclude termination is in the children's best interests. When the children were in the mother's care they were ill-kempt and dirty—one had head lice, and the mother did not have enough diapers for the children. The mother was also under the influence of methamphetamine while caring for the children. *See, e.g.*, *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children." (citing *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014))). Given the mother's history of providing inadequate care and supervision, we believe the mother presents a safety risk to the children. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (looking to a parent's "past performance because it may indicate the quality of care the parent is capable of providing in the future" when determining if termination is in the child's best interest). Because the children's safety is paramount, termination is necessary. *See J.E.*, 723 N.W.2d at 802 (Cady, J.,

concurring specially) (describing safety as a defining element of the best-interest analysis).

Accordingly, the second step of our review is complete, and we conclude termination is in the children's best interests.

**C. Exceptions**

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *See A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child[ren]," to determine whether the parent-child relationships should be saved. *Id.* (citation omitted).

The mother points to section 232.116(3)(c) to avoid termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship[s]." The mother has failed to demonstrate the parent-child bonds between herself and the children are strong enough to overcome our safety concerns. *See In re A.F.*, No. 19-1668, 2020 WL 569643, at *2 (Iowa Ct. App. Feb. 5, 2020).

Therefore, on the third step of our review, we conclude no exception in section 232.116(3) applies to preclude termination of the mother's parental rights.

**D. Additional Time**

Finally, we address the mother's request for additional time to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). But we cannot identify any specific changes that will occur within six months. Moreover, DHS has been involved with this family for several years. Over this time, the mother has made no real progress. So "we see no reason to believe any lasting and material change would occur in six months' time." *In re S.G.*, No. 19-1876, 2020 WL 2065946, at *2 (Iowa Ct. App. Apr. 29, 2019). The juvenile court properly denied the mother's request for additional time to work toward reunification.

**AFFIRMED.**